OPINION OF THE COURT
Jasen, J.
The issue presented on this appeal is whether an executor, by introducing evidence of the opening of bank accounts and withdrawals therefrom tending to show that property belonging to the estate of decedent was in the possession of respondents, “opened the door” and thereby waived the protection of CPLR 4519, the so-called “Dead Man’s Statute”, allowing respondents to introduce evidence of a personal transaction with the decedent in order to show a proper disposition of such property.
Petitioner Nathan M. Med win, executor of the last will *142 and testament of Robert S. Wood, brought this proceeding seeking to discover property alleged to have been improperly withheld from the estate and seeking delivery of any such property to the estate. (SCPA 2103, 2104.) The property sought to be recovered was the proceeds of certain bank accounts amounting to approximately $15,000 held jointly in the names of decedent and respondents Purzycki. Five such accounts were held jointly with respondent Therese Purzycki and one with respondent Frank Purzycki.*
In April, 1976, shortly before decedent’s death, respondents withdrew moneys from these accounts. Respondents in their answer admit that these withdrawals occurred and further admit that the funds withdrawn were exclusively the property of decedent. However, respondents steadfastly deny that they were in possession of this property at the time of decedent’s death and maintain that it has all been returned to the estate except for $402 which is admitted to have been retained by respondents.
At trial, petitioner Medwin produced documentary evidence primarily concerning the withdrawal of the funds by the Purzyckis and the conversion of the withdrawn funds into cash. The testimony of the executor himself was limited to a cursory explanation that a diligent search had failed to turn up the funds. This testimony was confirmed by the testimony of an associate of Mr. Medwin, who had also participated in the search. On the strength of this evidence,' petitioner rested.
*143 Respondents Frank and Therese Purzycki then took the stand and testified that they had indeed made the withdrawals in issue, but contended that after having converted the funds to cash, they personally presented this rather large sum of money to decedent while he was in his sickbed. Petitioner objected to such testimony upon the ground that CPLR 4519, the so-called “Dead Man’s Statute”, barred its admission into evidence. He contended that such delivery to Mr. Wood was a “personal transaction” with the decedent to which the Purzyckis were statutorily incompetent to testify absent a waiver of the protection of the statute by the executor.
The Surrogate overruled each of petitioner’s objections to the competency of the Purzyckis to testify to such a personal transaction with the decedent. The court held that by introducing evidence of the establishment of the bank accounts and of the withdrawals of the funds from such accounts, petitioner waived the protection of CPLR 4519. The court found that the transfer of decedent’s money to and from the Purzyckis was a single transaction and held that once the executor introduced evidence of a part of that transaction, he could not depend upon the statute to silence respondents with respect to the remainder of the transaction in issue. Having determined that the Purzyckis’ testimony was admissible in evidence, the court weighed the evidence before it and concluded that respondents were not in possession of funds belonging to the estate. The Appellate Division affirmed, two Justices dissenting, the decree of the Surrogate’s Court insofar as it denied petitioner relief as against respondents Purzycki. There should be a reversal.
The rule of evidence popularly referred to as the Dead Man’s Statute has a long history in the State of New York. Its first ancestors appeared on our statute books in the middle of the 19th century (see L 1851, ch 479; Code of Pro, § 399) and it has been carried forward in one form or another since that time. The statute is widely considered to be the last vestige of the common-law rule which made all interested persons and parties incompetent to testify. After the general rule barring testimony from interested persons *144 was abolished (L 1848, ch 379; Code of Pro, §§ 351, 352), a new rule was adopted to prevent the living from testifying to certain “personal transactions” with the dead. One of the main purposes of the rule was to protect the estate of the deceased from claims of the living who, through their own perjury, could make factual assertions which the decedent could not refute in court. While the utility and wisdom of the rule have been often questioned throughout its history (see, e.g., 2 Wigmore, Evidence [Chadbourn rev ed], §§ 578, 578a; McCormick, Evidence [2d ed], §65; Fisch, New York Evidence, § 302; Richardson, Evidence [10th ed — Prince], § 396) and the Legislature has often forcefully been urged to change or to modify the statute (see, e.g., Second Preliminary Report of the Advisory Committee on Practice and Procedure [1958], p 268), it, nonetheless, has been consistently reenacted by the Legislature and remains a part of the law of this State.
The Dead Man’s Statute is currently embodied in CPLR 4519, which states in pertinent part: “Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator or survivor of a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person * * * except where the executor * * * is examined in his own behalf, or the testimony of the * * * deceased person is given in evidence, concerning the same transaction or communication.” The statute prevents any person “interested in the event” from testifying to a “personal transaction” with the deceased unless the representative of the deceased has waived the protection of the statute by testifying himself or introducing the testimony of the decedent into evidence at trial.
In the case before us, it is uncontested that the Purzyckis are parties or persons “interested in the event” and that their testimony, insofar as it relates to their alleged personal delivery of the property in issue to the decedent, involves a “personal transaction” with the deceased. Hence, their testimony in the Surrogate’s Court would be rendered *145 inadmissible by the statute unless petitioner has somehow waived its protection.
By the terms of the statute, the representative of a decedent’s estate waives the protection of the statute if he testifies in his own behalf concerning a personal transaction of his adversary with the deceased. Once having introduced testimony concerning that transaction into evidence, he cannot thereafter prevent his adversary from testifying to the details of the same transaction, for to do so would give the estate an unfair advantage not intended by the statute.
Also, the executor cannot avoid a waiver by eliciting testimony from an interested party on the personal transaction in issue. It was long ago settled that when the executor questions his adversary as to all or part of a personal transaction with the decedent, he has “opened the door” as to that transaction and otherwise incompetent testimony is admissible to fully explain the personal transaction in issue. (See, e.g., Cole v Sweet, 187 NY 488; Nay v Curley, 113 NY 575.) The purpose of this rule is to place the parties, insofar as is practical in light of the policy embodied in the statute, in relatively equivalent positions vis-a-vis the same transaction. This prevents the unfair use of the statute as a sword rather than a shield.
However, both of the above “exceptions” to the Dead Man’s Statute are limited in application to the “personal transaction” to which the executor testified or forced another interested party to testify. By introducing such tes- . timony, the executor does not “open the door” to any or all personal transactions with the decedent. Rather, the waiver of the statute is limited to the “personal transaction” in issue. (Martin v Hillen, 142 NY 140.)
Applying the law to the case before us, we conclude that petitioner did not “open the door” or waive the protection of CPLR 4519. On his direct case, the only evidence presented by petitioner was documentary evidence of certain banking transactions, the testimony of a banker with respect thereto, and his own testimony and that of an associate that a diligent search failed to reveal the whereabouts *146 of certain property owned by the decedent. The executor did not testify or cause any other interested party to testify as to a personal transaction of the Purzyckis with the deceased. Thus, the executor did not “open the door” to testimony concerning the later personal delivery of the funds in issue to decedent and the testimony of the Purzyckis with respect to such a personal transaction was improperly admitted at trial.
It is argued by respondents that the withdrawal of the funds from the bank and the delivery of the same moneys to decedent are part of a single transaction and that, as a result, the executor “opened the door” by introducing evidence of part of that transaction. In response to this argument, it need only be noted that it is irrelevant to our inquiry whether or not the withdrawals proven by the executor are part ohthe same “transaction” as the incident which respondents wish^to prove. This is so because, as noted earlier, the executoKcan only “open the door” by testifying or forcing another to testifying to a personal transaction with the decedent. Where no such testimony regarding a personal transaction is offered or elicited, the protection of CPLR 4519 is not waived and the “door” is not“opened”.
Indeed, if respondents’ view of the law were accepted, the statute would be of little use to an executor and would fall far short of achieving its goal of protecting the estate. This is so because the executor, by showing that an individual has come into possession of estate property, would automatically “open the door” to testimony concerning personal transactions with the decedent which the decedent would, of course, be unable to refute. Such an interpretation would run counter to the clear purpose of the statute and will not be adopted by this court.
Nor can it be said that petitioner opened the door by cross-examining the Purzyckis as to their personal transactions with decedent. Such examination occurred long after the executor’s many objections to the competence of the Purzyckis to testify to the personal transaction with decedent had been overruled. Having failed to prevail on his objections, the executor must be allowed at least to ques *147 tion the credibility of the witnesses on the transaction which respondents put in issue.
In sum, in our opinion petitioner did not, in the presentation of his case, waive the protection of CPLR 4519. Hence, the testimony of respondents with regard to the personal delivery of funds to decedent, concerning as it does a personal transaction with the decedent, was improperly received into evidence over petitioner’s objections. Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Surrogate’s Court, Albany County, for a new trial at which such testimony should be excluded.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, with costs, and the matter remitted to the Surrogate’s Court, Albany County, for a new trial.

 The petition also sought discovery and return of certain property allegedly held by respondents Leroy and Elizabeth Chesebro. The Surrogate, holding that CPLR 4519 barred the Chesebros from testifying that Mr. Wood had made them a gift of such property, ordered a return of a significant portion of the property in issue to the estate. The Appellate Division modified the Surrogate’s decree by reversing so much thereof as granted petitioner Medwin relief against respondents Chesebro and remitted the matter to the Surrogate for further proceedings in which the Chesebros would be allowed to testify concerning this personal transaction with the deceased. On November 20, 1980, this court dismissed an appeal from so much of the order of the Appellate Division as reversed and remitted the proceeding involving the Chesebros to the Surrogate’s Court upon the ground that this portion of the Appellate Division order did not finally determine the proceeding within the meaning of the Constitution. Hence, the portion of this proceeding which relates to respondents Chesebro is not before.us on this appeal.